1

2

3

4

5

6

7

8                    **UNITED STATES DISTRICT COURT**

9                    **CENTRAL DISTRICT OF CALIFORNIA**

10

11   STACY LEE HERNANDEZ,              CASE NO. CV 18-10619 AS

12              Plaintiff,

13        v.                           **MEMORANDUM OPINION**

14   ANDREW M. SAUL, Commissioner
     of Social Security,[1]

15

16              Defendant.

17

18        For the reasons discussed below, IT IS HEREBY ORDERED that,

19   pursuant to Sentence Four of 42 U.S.C. § 405(g), the Commissioner's

20   decision is affirmed.

21

22                         **PROCEEDINGS**

23

24        On December 21, 2018, Stacy Lee Hernandez ("Plaintiff") filed

25   a Complaint seeking review of the denial of her application for

26   ─────────────────

27        [1] Andrew  M.  Saul,  Commissioner  of  Social  Security,  is
     substituted for his predecessor.  See 42 U.S.C. § 405(g); Fed. R.
     Civ. P. 25(d).

28

disability benefits by the Commissioner of Social Security ("Commissioner" or "Agency"). (Dkt. No. 1). The parties have consented to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 23, 24). On May 16, 2019, Defendant filed an Answer along with the Administrative Record ("AR"). (Dkt. Nos. 13, 14). The parties filed a Joint Stipulation ("Joint Stip.") on September 16, 2019, setting forth their respective positions regarding Plaintiff's claims. (Dkt. No. 19).

**BACKGROUND AND SUMMARY OF ADMINISTRATIVE RECORD**

On February 12, 2015, Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), pursuant to Titles II and XVI of the Social Security Act, alleging a disability onset date of October 28, 2012. (AR 103-04, 196-212). The Commissioner denied Plaintiff's applications initially and on reconsideration. (AR 74-132). On July 13, 2017, Plaintiff, represented by counsel, testified at a hearing before an Administrative Law Judge ("ALJ"). (AR 32-73). The ALJ also heard testimony from Sharon Spaventa, a vocational expert ("VE"). (AR 62-70, see id. 306-10).

On January 30, 2018, the ALJ denied Plaintiff's request for benefits. (AR 15-26). Applying the five-step sequential process, the ALJ found at step one that Plaintiff has not engaged in substantial gainful activity since October 28, 2012, the alleged onset date. (AR 18). At step two, the ALJ found that Plaintiff's right elbow osteoarthritis, lumbar spine degenerative disc disease,

status post remote right arm surgery, affective disorder, obesity, and headaches are severe impairments.  (AR 18).  At step three, the ALJ determined that Plaintiff does not have an impairment or combination of impairments that meet or medically equal the severity of any of the listings enumerated in the regulations.[2] (AR 20-21).

The ALJ then assessed Plaintiff's residual functional capacity (RFC)[3] and concluded that she can perform sedentary work, as defined in 20 C.F.R. §§ 404.1567(a) and 416.967(a),[4] except: Plaintiff can be "on feet 4 hours of an 8-hour day; lift 20 pounds occasionally, 10 pounds frequently; push/pull occasionally with the right upper extremity; occasionally balance, stoop, crawl; frequently fully extended reaching with dominant upper extremity; simple routine tasks."  (AR 21).  At step four, the ALJ found that Plaintiff is unable to perform any past relevant work.  (AR 24).  Based on Plaintiff's RFC, age, education, work experience and the VE's

---

[2]    The ALJ explicitly considered whether Plaintiff's medically determinable mental impairments meet the requirements of Listing 12.04 (depressive, bipolar and related disorders).  (AR 20-21).

[3]    The RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

[4]    "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. §§ 404.1567(a), 416.967(a).

testimony, the ALJ determined, at step five, that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including small parts assembler, toy stuffer, and addresser. (AR 24-25). Accordingly, the ALJ found that Plaintiff was not under a disability as defined by the Social Security Act from October 28, 2012, through the date of the decision. (AR 25-26).

The Appeals Council denied Plaintiff's request for review on October 19, 2018. (AR 1-6). Plaintiff now seeks judicial review of the ALJ's decision, which stands as the final decision of the Commissioner. 42 U.S.C. §§ 405(g), 1383(c).

## STANDARD OF REVIEW

This Court reviews the Commissioner's decision to determine if: (1) the Commissioner's findings are supported by substantial evidence; and (2) the Commissioner used proper legal standards. 42 U.S.C § 405(g); see Carmickle v. Comm'r, 533 F.3d 1155, 1159 (9th Cir. 2008); Hoopai v. Astrue, 499 F.3d 1071, 1074 (9th Cir. 2007). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (citing Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997)). It is relevant evidence "which a reasonable person might accept as adequate to support a conclusion." Hoopai, 499 F. 3d at 1074; Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996). To determine whether substantial evidence supports a finding, "a court must consider the record as a whole, weighing both evidence that

1    supports and evidence that detracts from the [Commissioner's]

2    conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir.

3    2001) (citation omitted); see Widmark v. Barnhart, 454 F.3d 1063,

4    1066 (9th Cir. 2006) (inferences "reasonably drawn from the record"

5    can constitute substantial evidence).

6

7         This Court "may not affirm [the Commissioner's] decision

8    simply by isolating a specific quantum of support evidence, but

9    must also consider evidence that detracts from [the Commissioner's]

10   conclusion." Ray v. Bowen, 813 F.2d 914, 915 (9th Cir. 1987)

11   (citation and internal quotation marks omitted).  However, the

12   Court cannot disturb findings supported by substantial evidence,

13   even though there may exist other evidence supporting Plaintiff's

14   claim. See Torske v. Richardson, 484 F.2d 59, 60 (9th Cir. 1973).

15   "If the evidence can reasonably support either affirming or

16   reversing the [Commissioner's] conclusion, [a] court may not

17   substitute its judgment for that of the [Commissioner]." Reddick,

18   157 F.3d at 720-21 (citation omitted).

19

20                     **DISCUSSION**

21

22        Plaintiff contends that the ALJ (1) improperly assessed her

23   RFC; (2) erred in assessing lay witness testimony; (3) failed to

24   properly assess her subjective symptoms; and (4) posed an

25   incomplete hypothetical to the VE. (Joint Stip. at 7-10, 13-17,

26   19-23, 27-32).  After consideration of the parties' arguments and

27   the record as a whole, the Court finds the Commissioner's decision

28

to be supported by substantial evidence and free from material legal error.[5]

**A.   The ALJ's Reasons for Discrediting Plaintiff's Subjective Symptom Testimony Were Specific, Clear and Convincing**

At her hearing, Plaintiff testified that she stopped working after a disagreement with her manager.  (AR 42-43).  She also experienced chronic headaches and had difficulty extending her right arm.  (AR 38-39, 44-46).  Plaintiff has headaches five to six days a month where she cannot get out of bed.  (AR 51-52, 58).  Her medications do not help.  (AR 52).  Due to surgery as a child, Plaintiff does not have full extension of her right arm and has developed arthritis which has gotten worse in the last few years.  (AR 55-56).  She also has difficulty rotating her right elbow.  (AR 57).  She has had a cortisone injection in her elbow that helped the pain for a couple days.  (AR 46).  Plaintiff experiences back pain that radiates to her hip and right leg.  (AR 48-49).  The pain in her back is 3/10 on a good day and 6/10 on a bad day.  (AR 48).  Plaintiff experiences chronic depression, which is only partially controlled with medication.  (AR 59).

Plaintiff is able to walk only one-half block before experiencing pain.  (AR 49).  She can lift a gallon of milk with

---

[5]   The harmless error rule applies to the review of administrative decisions regarding disability.  McLeod v. Astrue, 640 F.3d 881, 886-88 (9th Cir. 2011); see Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (an ALJ's decision will not be reversed for errors that are harmless).

her left arm without pain.  (AR 50, 57).  She can sit for 20 to 30 minutes before needing to move around.  (AR 50).  Plaintiff lives with her adult daughter and is able to drive without difficulty. (AR 53-54).  She does as many chores as possible and drives her daughter to school.  (AR 55).

When assessing a claimant's credibility regarding subjective pain or intensity of symptoms, the ALJ must engage in a two-step analysis.  Trevizo v. Berryhill, 871 F.3d 664, 678 (9th Cir. 2017). First, the ALJ must determine if there is medical evidence of an impairment that could reasonably produce the symptoms alleged. Garrison v. Colvin, 759 F.3d 995, 1014 (9th Cir. 2014).  "In this analysis, the claimant is not required to show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom."  Id. (emphasis in original) (citation omitted).  "Nor must a claimant produce objective medical evidence of the pain or fatigue itself, or the severity thereof." Id. (citation omitted).

If the claimant satisfies this first step, and there is no evidence of malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony about the symptom severity.  Trevizo, 871 F.3d at 678 (citation omitted); see also Smolen, 80 F.3d at 1284 ("[T]he ALJ may reject the claimant's testimony regarding the severity of her symptoms only if he makes specific findings stating clear and convincing reasons for doing so."); Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883

7

1  (9th Cir. 2006) ("[U]nless an ALJ makes a finding of malingering

2  based on affirmative evidence thereof, he or she may only find an

3  applicant not credible by making specific findings as to

4  credibility and stating clear and convincing reasons for each.").

5  "This is not an easy requirement to meet: The clear and convincing

6  standard is the most demanding required in Social Security cases."

7  Garrison, 759 F.3d at 1015 (citation omitted).

8

9      Where, as here, the ALJ finds that a claimant suffers from a

10  medically determinable physical or mental impairment that could

11  reasonably be expected to produce her alleged symptoms, the ALJ

12  must evaluate "the intensity and persistence of those symptoms to

13  determine the extent to which the symptoms limit an individual's

14  ability to perform work-related activities for an adult."  Soc.

15  Sec. Ruling ("SSR") 16-3p, 2017 WL 5180304, at *3.[6]  SSR 16-3p

16  superseded SSR 96-7p and eliminated the term "credibility" from

17  the Agency's sub-regulatory policy.  However, the Ninth Circuit

18  has noted that SSR 16-3p

19

20      makes clear what [the Ninth Circuit's] precedent already

21      required: that assessments of an individual's testimony

22      by an ALJ are designed to "evaluate the intensity and

23      persistence of symptoms after the ALJ finds that the

24  ───────────────

25      [6]  SSR 16-3p, which superseded SSR 96-7p, is applicable to
this case, because SSR 16-3p, which became effective on March 28,

26  2016, was in effect at the time of the Appeal Council's October
19, 2018 denial of Plaintiff's request for review.  Nevertheless,

27  the regulations on evaluating a claimant's symptoms, including
pain, see 20 C.F.R. §§ 404.1529 and 416.929, have not changed.

28

individual has a medically determinable impairment(s) that could reasonably be expected to produce those symptoms," and not to delve into wide-ranging scrutiny of the claimant's character and apparent truthfulness.

Trevizo, 871 F.3d at 678 n.5 (quoting SSR 16-3p) (alterations omitted).

In discrediting the claimant's subjective symptom testimony, the ALJ may consider: "ordinary techniques of credibility evaluation, such as . . . prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and the claimant's daily activities." Ghanim v. Colvin, 763 F.3d 1154, 1163 (9th Cir. 2014) (citation omitted). Inconsistencies between a claimant's testimony and conduct, or internal contradictions in the claimant's testimony, also may be relevant. Burrell v. Colvin, 775 F.3d 1133, 1137 (9th Cir. 2014); Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997). In addition, the ALJ may consider the observations of treating and examining physicians regarding, among other matters, the functional restrictions caused by the claimant's symptoms. Smolen, 80 F.3d at 1284; accord Burrell, 775 F.3d at 1137. However, it is improper for an ALJ to reject subjective testimony based "solely" on its inconsistencies with the objective medical evidence presented. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) (citation omitted).

1    Further, the ALJ must make a credibility determination with

2    findings that are "sufficiently specific to permit the court to

3    conclude that the ALJ did not arbitrarily discredit claimant's

4    testimony." Tommasetti v. Astrue, 533 F.3d 1035, 1039 (9th Cir.

5    2008) (citation omitted); see Brown-Hunter v. Colvin, 806 F.3d 487,

6    493 (9th Cir. 2015) ("A finding that a claimant's testimony is not

7    credible must be sufficiently specific to allow a reviewing court

8    to conclude the adjudicator rejected the claimant's testimony on

9    permissible grounds and did not arbitrarily discredit a claimant's

10   testimony regarding pain.") (citation omitted).  Although an ALJ's

11   interpretation of a claimant's testimony may not be the only

12   reasonable one, if it is supported by substantial evidence, "it is

13   not [the court's] role to second-guess it." Rollins v. Massanari,

14   261 F.3d 853, 857 (9th Cir. 2001).

15

16   Plaintiff vaguely asserts that the ALJ erroneously discredited

17   her subjective symptom statements.  (Joint Stip. at 20-23).  As

18   set forth below, however, the ALJ provided multiple, specific,

19   clear, and convincing reasons, supported by evidence in the record,

20   to find Plaintiff's complaints of pain and other symptomology only

21   partially credible.  (AR 22-23).

22

23   First, the ALJ found that Plaintiff's statements were

24   internally inconsistent.  (AR 22-23).  "[T]he ALJ may consider

25   inconsistencies either in the claimant's testimony or between the

26   testimony and the claimant's conduct." Molina v. Astrue, 674 F.3d

27   1104, 1112 (9th Cir. 2012); see Burch v. Barnhart, 400 F.3d 676,

28   680 (9th Cir. 2005) ("ALJ may engage in ordinary techniques of

credibility evaluation, such as . . . inconsistencies in claimant's testimony"); accord 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). Moreover, a good response to treatment supports an adverse credibility finding. See Tommasetti, 533 F.3d at 1040 ("The record reflects that [the claimant] responded favorably to conservative treatment including . . . the use of anti-inflammatory medication [and] a transcutaneous electrical nerve stimulation unit . . . . Such a response to conservative treatment undermines [claimant's] reports regarding the disabling nature of his pain."); Crane v. Shalala, 76 F.3d 251, 254 (9th Cir. 1996) ("evidence suggesting that [the claimant] responded well to treatment" supports an adverse credibility finding). The ALJ noted that Plaintiff consistently reported that her medications and treatment were effective at relieving her pain and other symptoms. (AR 22). Despite a history of depression, it was maintained by medications from Plaintiff's primary care provider. (AR 319, 327-66). In July 2013, Plaintiff reported that analgesics relieved her headaches. (AR 342). She reported significant improvement after receiving epidural steroid injections in July, November, and December 2014. (AR 425, 435, 450). In March 2015, Plaintiff acknowledged improvement with baclofen and water therapy. (AR 411). In April 2015, Plaintiff's treating physician found that Plaintiff was obtaining functional pain relief on her current regimen. (AR 406). In March 2016, Plaintiff acknowledged 80% pain relief from a recent epidural steroid injection. (AR 490). The next month, Plaintiff's treating physician again noted that she was obtaining functional pain control with her current medication regimen without any side effects. (AR 484). In November 2016,

Plaintiff reported good pain control from her opioid medications, with increased physical activity, improved mood, and normal sleep. (AR 536). In May 2017, Plaintiff reported that her pain was 0/10. (AR 694). These admissions directly contradict Plaintiff's testimony of disabling pain. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2006) ("Impairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits.").

Second, the ALJ concluded that Plaintiff's reported participation in everyday activities were inconsistent with her testimony about pain and functional limitations. (AR 23). "ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day." Garrison, 759 F.3d at 1016. Nevertheless, an ALJ properly may consider the claimant's daily activities in weighing credibility. Tommasetti, 533 F.3d at 1039. If a claimant's level of activity is inconsistent with the claimant's asserted limitations, it has a bearing on credibility. Garrison, 759 F.3d at 1016. Here, in September 2016, Plaintiff reported good function and activities of daily living with her injections and medication. (AR 23, 549). As noted by the ALJ, Plaintiff is able to do cleaning, laundry, drive a car, and shop in stores. (AR 23, 256-57). She has no trouble handling money and engaging in social activities, such as lunch and movies, with

1  her friends.  (AR 23, 257-58).  These activities belie Plaintiff's

2  testimony of disabling symptoms and limitations.

3

4      Plaintiff contends that it takes her all day to clean and has

5  help doing some household chores.  (Joint Stip. at 20).  However,

6  the ALJ is <u>not</u>, contrary to Plaintiff's assertion (<u>id.</u>),

7  transferring the ability to do these chores into workplace skills.

8  Instead, it is Plaintiff's ability to do these chores, not how long

9  they take, that undermines her subjective statements.  (AR 23).

10

11      Third, the ALJ found that Plaintiff did not stop working due

12  to her impairments, but rather because of a "disagreement" with

13  her employer.  (AR 23).  An ALJ may properly consider whether a

14  claimant left her job for reasons other than an alleged impairment.

15  <u>See</u> <u>Bruton v. Massanari</u>, 268 F.3d 824, 828 (9th Cir. 2001), <u>as</u>

16  <u>amended</u> (Nov. 9, 2001); <u>see also</u> <u>Gregory v. Bowen</u>, 844 F.2d 664,

17  667 (9th Cir. 1988) ("substantial evidence indicated that the

18  condition of Gregory's back had remained constant for a number of

19  years and that her back problems had not prevented her from working

20  over that time"); <u>Sadeeq v. Colvin</u>, 607 F. App'x 629, 631 (9th Cir.

21  2015) (ALJ did not err in concluding an impairment was not severe

22  where the claimant "was able to continue working" despite his

23  symptoms).  Plaintiff contends that the ALJ is merely "speculating"

24  as to the reason she stopped working and "[i]t is equally likely

25  that given her obesity and other impairments that the employer had

26  made accommodations for her to work." (Joint Stip. at 20-21).  But

27  Plaintiff herself acknowledged that she stopped working due to a

28  "disagreement with [her] manager" and testified that she was

physically able to work despite her headaches and difficulty using her arm.  (AR 42, 45-46).

   Finally, the ALJ found that Plaintiff's subjective statements about the intensity and limiting effects of her symptoms were inconsistent with the objective medical evidence.  (AR 23).  While inconsistencies with the objective medical evidence cannot be the sole ground for rejecting a claimant's subjective testimony, it is a factor that the ALJ may consider when evaluating credibility. Bray, 554 F.3d at 1227; Burch, 400 F.3d at 681; Rollins, 261 F.3d at 857; see SSR 16-3p, at *5 ("objective medical evidence is a useful indicator to help make reasonable conclusions about the intensity and persistence of symptoms, including the effects those symptoms may have on the ability to perform work-related activities").  Here, Plaintiff's testimony about her limited ability to walk and sit are belied by physical examinations that demonstrated normal gait, only mild pain with motion, and a negative straight leg raising test.  (AR 333, 593).  While Plaintiff complained of significant issues with her right arm and headaches, her treatment was focused instead on her lower back pain.  The lack of treatment records during the relevant period suggests that Plaintiff's right arm symptoms were not as severe as she alleged. See Tommasetti, 553 F.3d at 1039-40 (ALJ may properly infer that claimant's pain "was not as all-disabling as he reported in light of the fact that he did not seek an aggressive treatment program").

1    The Court finds that the ALJ offered clear and convincing
2    reasons, supported by substantial evidence in the record, for his
3    adverse credibility findings.  Accordingly, no remand is required.
4
5    **B.    The ALJ Provided Germane Reasons For Rejecting Lay Testimony**
6
7    In a third-party statement, Plaintiff's friend asserted that
8    Plaintiff is unable to stand on her feet for long period time and
9    often wakes up with headaches.  (AR 244).  Nevertheless, Plaintiff
10   is able to perform personal care tasks, prepare meals, do some
11   house and yard work, and drive a car.  (AR 245-47).  Plaintiff's
12   friend asserted that Plaintiff has difficulty lifting, squatting,
13   bending, standing, reaching, walking, sitting, kneeling, climbing,
14   completing tasks, and concentrating.  (AR 249).  Plaintiff can walk
15   only two to six blocks at a time before needing to rest and cannot
16   lift more than 15-20 pounds.  (AR 249).
17
18   Plaintiff asserts that the ALJ erred in assessing the lay
19   witness testimony.  (Joint Stip. at 15-17).  The ALJ gave
20   Plaintiff's friend's statements "little weight" because they were
21   similar to Plaintiff's allegations and, like Plaintiff's
22   statements, were contradicted by the objective medical record.  (AR
23   24).  "Lay testimony as to a claimant's symptoms is competent
24   evidence that an ALJ must take into account, unless he or she
25   expressly determines to disregard such testimony and gives reasons
26   germane to each witness for doing so."  Lewis v. Apfel, 236 F.3d
27   503, 511 (9th Cir. 2001).  "One reason for which an ALJ may discount
28   lay testimony is that it conflicts with medical evidence."  Id.

The ALJ provided germane reasons for rejecting Plaintiff's friend's statement.  The third-party statement largely mirrored the statement submitted by Plaintiff.  (Compare AR 244-53, with id. 254-62).  As discussed above, the ALJ gave clear and convincing reasons for rejecting Plaintiff's subjective complaints.  Thus, because Plaintiff's friend's "lay testimony was similar to [Plaintiff's] complaints, it follows that the ALJ also gave germane reasons for rejecting the lay witness testimony." Leon v. Berryhill, 880 F.3d 1041, 1046 (9th Cir. 2017); see Molina, 674 F.3d at 1122 (because "the lay testimony described the same limitations as Molina's own testimony, . . . the ALJ's reasons for rejecting Molina's testimony apply with equal force to the lay testimony"); Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009) ("In light of our conclusion that the ALJ provided clear and convincing reasons for rejecting Valentine's own subjective complaints, and because Ms. Valentine's testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting her testimony.").

In sum, the ALJ provided germane reasons for rejecting Plaintiff's friend's lay testimony, and no remand is required.

**C.   The ALJ's RFC Assessment Is Supported By Substantial Evidence**

Plaintiff contends that the ALJ failed to properly evaluate her RFC.  (See generally Joint Stip. at 7-13, 19-23).  She vaguely asserts that the ALJ failed to fully assess the medical opinions,

1  her right elbow limitations, chronic headaches, degenerative disc

2  disease, and obesity on her ability to work.  (Id.).

3

4      "A claimant's residual functional capacity is what he can

5  still do despite his physical, mental, nonexertional, and other

6  limitations."  Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th

7  Cir. 1989) (citing 20 C.F.R. § 404.1545).  An RFC assessment

8  requires the ALJ to consider a claimant's impairments and any

9  related symptoms that may "cause physical and mental limitations

10 that affect what [he] can do in a work setting."  20 C.F.R.

11 §§ 404.1545(a)(1), 416.945(a)(1).  In determining a claimant's RFC,

12 the ALJ considers all relevant evidence, including residual

13 functional capacity assessments made by consultative examiners,

14 State Agency physicians, and medical experts.   20 C.F.R.

15 §§ 404.1545(a)(3), 416.945(a)(3); see also id. §§ 404.1513(c),

16 416.913(c).

17

18      Here, in fashioning Plaintiff's RFC, the ALJ properly

19 "consider[ed] all of [Plaintiff's] impairments, including

20 impairments that are not severe" and found that she was capable of

21 a limited range of sedentary work.  (AR 17, 21); see Macri v.

22 Chater, 93 F.3d 540, 545 (9th Cir. 1996) ("When a claimant suffers

23 from multiple impairments, the Commissioner must consider their

24 combined effect in determining whether the claimant is disabled.");

25 accord 20 C.F.R. §§ 416.923(c), 416.945(a)(2).  The ALJ properly

26 found that Plaintiff's right elbow osteoarthritis, lumbar spine

27 degenerative disc disease, status post remote right arm surgery,

28 affective disorder, obesity, and headaches are severe impairments.

(AR 18-20).   Plaintiff does not meet her burden to demonstrate, with medical findings or diagnostic tests, that these impairments limit her functional capacity further than the ALJ's RFC determination.   Indeed, Plaintiff does not identify any medical evidence that contradicts the ALJ's conclusions.   Plaintiff does allege more right upper extremity limitation than the ALJ assessed. (Compare Joint Stip. at 7, 9-10, with AR 21).   However, to the extent that she is relying on her subjective statements or her friend's third-party report, the ALJ properly discredited this evidence, as discussed above.

Further, Plaintiff misapprehends her treating physician's opinion.   In November 2015, Aaron Collins, D.O., opined that Plaintiff "cannot stand for long periods of time[ ] and cannot lift over 20 pounds."  (AR 593).   Dr. Collins concluded that even with Plaintiff's limitations, she is capable of sedentary work.   (AR 593).   The ALJ gave Dr. Collins's opinion "great weight."  (AR 24). Nevertheless, Plaintiff emphasizes that in the next sentence, Dr. Collins indicated, "although [Plaintiff] *cannot do any lifting*, I do not believe this makes her unable to do any form of work."  (AR 593) (emphasis added).   But Plaintiff's focus on Dr. Collins's hyperbolic statement ignores the context of his statement, as well as the overall medical record.   In the prior sentence, Dr. Collins clearly found Plaintiff capable of lifting 20 pounds.   (AR 593). "[T]he ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."  Tommasetti, 533 F.3d at 1041.   Moreover, Plaintiff sought relatively little treatment for her arm condition, and the few records indicate only somewhat

18

1   limited range of motion.  (AR 321, 586, 615).  Other than her own

2   subjective statements, Plaintiff does not identify any medical

3   records that preclude her from "any" lifting.  Indeed, both

4   Plaintiff and her friend reported that she can lift up to 15-20

5   pounds.  (AR 249, 259).  And after reviewing the medical evidence,

6   the state agency consultants both concluded that Plaintiff is

7   capable of lifting up to 20 pounds occasionally, which is what the

8   ALJ adopted.  (AR 21, 82, 112).  Thus, substantial evidence supports

9   the ALJ's assessment limiting Plaintiff to lifting 20 pounds

10  occasionally.  (AR 21).

11

12       Nevertheless, Plaintiff contends that the ALJ failed to

13  reconcile the differences between the Agency's two consultants.  In

14  June 2015, G. Bugg, M.D., a State agency consultant, evaluated the

15  medical record and opined that Plaintiff is limited to performing

16  work at the sedentary level, but with additional limitations,

17  including occasional pushing, pulling and reaching with her right

18  arm.[7]  (AR 82-83).  In January 2016, M. Sohn, M.D., reevaluated the

19  medical record and found that Plaintiff is limited to sedentary

20  work with occasional postural activities and occasional overhead

21  reaching with her right arm.  (AR 112-13).  Plaintiff contends that

22  the ALJ rejected Dr. Bugg's opinion in favor of Dr. Sohn's opinion

23  without any explanation.  (Joint Stip. at 8).  To the contrary,

24  the ALJ found that Dr. Sohn's opinion provided "greater consistency

25  _____

26       [7] Plaintiff contends that Dr. Bugg also restricted her to
    occasional handling and fingering with her right upper extremity.
    (Joint Stip. at 8).  But Dr. Bugg clearly found that Plaintiff's
27  handling (gross manipulation) and fingering (fine manipulation)
    were "unlimited."  (AR 83).

28

with the record that showed that [Plaintiff] had very little treatment for her right elbow and did not frequently report difficulties with any functional activities to her treatment providers." (AR 23).   Further Dr. Sohn noted new evidence in the record indicating "50% pain reduction following ESI" and normal gait and posture despite reduced lumbosacral range of motion. (AR 109).   While Plaintiff argues that she "sought treatment and was referred to pain management for both lumbar spine and headaches, as well as her elbow," she does not identify any medical records that support a greater upper extremity limitation than assessed in the RFC.   To the contrary, while arm surgery as a teenager resulted in arthritis in Plaintiff's elbow, the arthritis did not prevent her from using her arm. (AR 321, 355).   While Plaintiff emphasizes March 2014 and June 2016 medical records finding she had limited range of motion in her right elbow (Joint Stip. at 14-15) (citing AR 319, 517), subsequent medical records indicate that Plaintiff maintained normal function and activities of daily living with her medications and therapy (AR 536, 694).   As the ALJ noted (AR 18-20), Plaintiff exhibited reduced range of motion in some planes but normal motion in others. (AR 321, 517).   In 2016, Plaintiff had normal grip strength in both hands and full muscle strength in both arms. (AR 614).   Thus, substantial medical evidence indicates that Plaintiff is capable of a limited range of sedentary activity.

    Plaintiff appears to confuse conditions with impairments.   She emphasizes that the ALJ did not assess any limitations related to her pain, adjustment disorder, sacroiliitis, lumbago, lumbosacral spondylosis, lumbar radiculopathy, lumbar facet arthropathy,

degenerative disc disease, osteoarthritis, headaches, and obesity. (Joint Stip. at 7-9, 14-15, 21-23).  However, even if a claimant receives a particular diagnosis, it does not necessarily follow that the claimant is disabled, because it is the claimant's symptoms and true limitations that generally determine whether she is disabled.  See Rollins, 261 F.3d at 856.  Indeed, "[t]he mere existence of an impairment is insufficient proof of a disability." Matthews v. Shalala, 10 F.3d 678, 680 (9th Cir. 1993); see Key v. Heckler, 754 F.2d 1545, 1549 (9th Cir. 1985) ("The mere diagnosis of an impairment . . . is not sufficient to sustain a finding of disability."); accord Lundell v. Colvin, 553 F. App'x 681, 684 (9th Cir. 2014).  For example, a "person can be depressed, anxious, and obese yet still perform full-time work."  Gentle v. Barnhart, 430 F.3d 865, 868 (7th Cir. 2005).  As the Seventh Circuit explained: "[c]onditions must not be confused with disabilities.  The social security disability benefits program is not concerned with health as such, but rather with ability to engage in full-time gainful employment."  Id. (citation omitted); accord Davis v. Berryhill, No. CV 17-2558, 2017 WL 6209817, at *7 (C.D. Cal. Dec. 7, 2017); Owen v. Berryhill, No. 17 CV 5193, 2018 WL 388593, at *5 (W.D. Wash. Jan. 12, 2018), aff'd sub nom. Owen v. Saul, No. 18-35210, 2020 WL 1656440 (9th Cir. Apr. 3, 2020).  In any event, based on the medical evidence, the ALJ took all Plaintiff's symptoms and impairments into consideration in restricting her to a limited range of sedentary work.  (AR 21).  And in consideration of her affective disorder and chronic headaches, the ALJ restricted Plaintiff to simple, routine tasks.  (AR 21).

1   The ALJ has the sole authority to review medical and other

2   record evidence and translate the evidence into work related

3   functions.  20 C.F.R. § 404.1527(d)(2) (the "residual functional

4   capacity" is an issue "reserved to the Commissioner").  Based on

5   the evidence, the ALJ properly found that Plaintiff had the ability

6   to perform a limited range of sedentary work.  See Stubbs-

7   Danielson, 539 F.3d at 1174-76 (ALJ is responsible for translating

8   claimant's impairments into work-related functions and determining

9   RFC); see also Tommasetti, 533 F.3d at 1041-42 ("The ALJ is

10  responsible for determining credibility, resolving conflicts in

11  medical testimony, and for resolving ambiguities.") (citation

12  omitted).  Accordingly, the ALJ's RFC assessment is supported by

13  substantial evidence, and no remand is required.[8]

14

15

16

17

18

19

20

21

22   _____

23   [8] Plaintiff also contends that the hypothetical posed to the VE did not contain all of her limitations.  (Joint Stip. at 29-31).  But the hypothetical question contained all the limitations supported by the overall medical record, as reflected in the ALJ's RFC determination.  (Compare AR 21, with id. 66-67).  As noted above, the ALJ's RFC was supported by substantial evidence.  Thus, the ALJ's reliance on the VE's testimony in response to the hypothetical was proper.  See Thomas v. Barnhart, 278 F.3d 947, 959-60 (9th Cir. 2002); Magallanes v. Bowen, 881 F.2d 747, 756-57 (9th Cir. 1989).

24

25

26

27

28

**ORDER**

For the foregoing reasons, the decision of the Commissioner is affirmed.


LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:  May 27, 2020


_____/s/_____
ALKA SAGAR
UNITED STATES MAGISTRATE JUDGE